IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA L. AGUIRRE,

                Plaintiff,

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 6:16-cv-01333-MA

OPINION AND ORDER

ROBERT A. BARON
KATHERINE EITENMILLER
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

LISA GOLDOFTAS
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900
Seattle, WA 98104

    Attorneys for Defendant

MARSH, Judge

    Plaintiff Sandra L. Aguirre seeks judicial review of the final decision of the Commissioner

of Social Security denying her applications for a period of disability, disability insurance benefits

("DIB"), and child's disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-

403, and application for Supplemental Security Income ("SSI") disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court affirms the Commissioner's

decisions.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff protectively filed DIB, SSI, and child's disability benefit applications on December

12, 2012, alleging disability beginning September 1, 2009, due to generalized anxiety disorder, post

traumatic stress disorder ("PTSD"), chronic depression, nausea, bipolar disorder, back and shoulder

pain, and abdominal pain. Tr. Soc. Sec. Admin. R. ("Tr.") 116, 305, ECF Nos. 9 & 10. Plaintiff's

claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before

an administrative law judge ("ALJ"). The ALJ held a hearing on November 6, 2014, at which

Plaintiff appeared with her attorney and testified. A vocational expert, Jeffrey F. Tittelfitz, also

appeared at the hearing and testified. On December 12, 2014, the ALJ issued unfavorable decisions.[1] The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decisions became the final decisions of the Commissioner for purposes of review.

Plaintiff was born in 1988, and was 21 years old on the alleged onset of disability date, and 26 years old at the time of the ALJ's decision. Plaintiff has a high school education and completed cosmetology school, has past no relevant work, and has worked part-time in a fast food restaurant and as a cashier at a craft store. Tr. 68, 291, 306.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2011. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since

---

[1] Plaintiff's applications for DIB, SSI, and child's disability benefits were consolidated for hearing purposes, but the ALJ issued a separate written decision for the child's disability benefits. *See* Tr. 41-50. The ALJ's decisions are substantively the same, but the child disability application covers the time from Plaintiff's alleged onset date of September 1, 2009 through the date she attained the age of 22 in 2010. 42 U.S.C. § 402(d)(1)(B)(ii) (noting that to be eligible for disabled child's benefits, the claimant must have a disability that began before attaining age 22). For ease of analysis, the Court refers to the decision pertaining to Plaintiff's DIB and SSI applications. Tr. 20-30.

September 1, 2009. At step two, the ALJ found that Plaintiff had the following severe impairments:

carpal tunnel syndrome, migraines, post-traumatic stress disorder ("PTSD"), and generalized anxiety

disorder. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments,

did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a range

of light work with additional limitations:

> [Plaintiff] is further limited to tasks involving no more than frequent climbing of
> ramps or stairs, and no more than occasional climbing of ladders, ropes, or scaffolds.
> She is limited to no more than occasional exposure to workplace hazards, such as
> unprotected heights and moving mechanical parts. She can perform simple, routine,
> and repetitive tasks consistent with unskilled work, as defined by the Dictionary of
> Occupational Titles (DOT). She is limited to goal-oriented work, such as office
> cleaning work, but she is unable to perform production rate pace work, such as
> assembly line work. She can tolerate occasional interaction with supervisors, but
> only superficial interaction with co-workers in the public (superficial defined as
> casual or perfunctory).

Tr. 22.

At step four, the ALJ found that Plaintiff has no past relevant work. At step five, the ALJ

found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist

in significant numbers in the national economy that she can perform, such as small products

assembler, electronics worker, and garment sorter. Accordingly, the ALJ concluded that Plaintiff

has not been under a disability under the Social Security Act from September 1, 2009 through the

date of the decision.

## ISSUES ON REVIEW

On appeal to this Court, Plaintiff contends the following errors were committed: (1) the ALJ

improperly evaluated her testimony; and (2) the ALJ failed to account for all of her social limitations

in the hypothetical to the Vocational Expert ("VE") and RFC determination, resulting in an error at step five. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I. The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first

stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, and effectiveness or adverse side effects of any pain medication.[2] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that she has carpal tunnel in her left arm and occasionally wears a wrist brace. Tr. 65-66. Plaintiff is left handed. Tr. 65. Plaintiff testified that she is employed by a craft store as a cashier and works between 10 and 12 hours per week. Tr. 68.

---

[2] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility." The ALJ's decision in this case was issued December 12, 2014. The Court has previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). The Court adheres to that rationale here.

Plaintiff stated that she has been employed for a little over 12 months. Tr. 69. Plaintiff testified that she is scheduled to work between two and four days per week, and that her employer occasionally calls her in to work. Tr. 70. Plaintiff stated that she sometimes misses work due to her anxiety. Tr. 70. Plaintiff testified that in a three week period, she may call in sick three or four times. Tr. 92. Plaintiff stated that more than two times per month, she will call her manager to let her know she can not make it. Tr. 92. Plaintiff testified that her employer is aware of her conditions, and has been very understanding in letting her miss work without disciplining her. Tr. 71. Plaintiff further testified that her manager did complain that she has been calling in sick a lot. Tr. 93. Plaintiff explained that when she is working and her anxiety and depression get to her, she will finish the order on which she is working, close her cashier lane, and move any remaining customers to another check-out line. Tr. 72. Plaintiff also testified that two or three times a week when working, she needs to take a rest to calm herself down, and that it can take five minutes to a half an hour. Tr. 96. Plaintiff also testified that approximately five times in a two month period, she will need to go home instead of returning to her shift. Tr. 97. Plaintiff testified that her job at the craft store is "way more supportive than any of the other jobs that I had." Tr. 97.

Plaintiff testified that after working, her left wrist is sore, and that she will use ice or ibuprofen to treat it. Tr. 74. Plaintiff testified that she also suffers occasional migraine headaches. Tr. 75. Plaintiff stated that her migraines have been better since she increased her potassium. Tr. 76. Plaintiff stated that she also has occasional abdominal pain. Tr. 76. Plaintiff testified that when her abdominal pain is bothering her, she "just h[as] to suck it up" because she needs to go to work. Tr. 76-77. Plaintiff testified that she may have irritable bowel syndrome and that her abdominal pain is worse when she is stressed. Tr. 78. Plaintiff testified that she feels she can not work full-

time because she is barely able to work part-time due to her depression, anxiety, and nausea. Tr. 87. Plaintiff testified that she smokes marijuana once or twice a month for her nausea. Tr. 89-90.

Plaintiff testified that she lives with her boyfriend, and her boyfriend's mother and step-father. Tr. 82. Plaintiff stated that she and her boyfriend rarely go out, and if so, they will watch a movie or go bowling. Tr. 82.

Plaintiff testified that she stopped attending group counseling sessions at Douglas County Mental Health because she was not receiving the help she needs. Tr. 95. Plaintiff testified that she has had conflicts with supervisors in her previous jobs. Tr. 97. Plaintiff also stated that she had problems with her mental health in high school, and was disciplined for hitting, and talking back. Tr. 97-98.

In a January 7, 2013 Disability Report-Adult, Plaintiff reported that she stopped working in March 2010 because she could not work the night shift due to her medications, and was terminated. Tr. 305. In a work history report, Plaintiff indicated that she has worked in the past in fast food restaurants full-time and as a child care provider in a day care center for six hours a day, six days a week. Tr. 315. In a Function Report - Adult, Plaintiff provided that her anxiety makes it hard to deal with rude or difficult customers, her depression and PTSD make it hard to handle criticism, and her nausea makes it difficult to be near smells. Tr. 320. Plaintiff described that in a typical day, she vomits upon waking, takes her medications with breakfast, then will vomit again. Tr. 321. Plaintiff stated she spends most of her day in her room alone, and rarely leaves the house. Plaintiff stated she takes a sleeping pill at night so she can rest. Tr. 321. Plaintiff does not always shower, but otherwise does not have trouble with personal care. Tr. 322. Plaintiff does not cook because she lives with others, but can do laundry, vacuum, and tidy her room. Tr. 323. Plaintiff indicated she

can drive, go shopping, has no hobbies, and leaves the house to attend counseling, group therapy, and pick up prescriptions. Tr. 324. Plaintiff stated that her impairments affect her ability to lift, reach, talk, hear, remember, complete tasks, concentrate, understand, and get along with others. Tr. 325. Plaintiff estimated she can walk for one hour, pay attention for 15 to 20 minutes, has trouble with written instructions, but can attend to spoken instructions, and has been fired because she had difficulty with her manager. Tr. 325. Plaintiff stated she cannot handle stress or changes in routine due to her anxiety and depression. Tr. 326.

Plaintiff argues that the ALJ failed to identify clear and convincing reasons for discounting her credibility. The Court disagrees. In the decision, the ALJ provided several reasons for discounting Plaintiff's credibility, including: (1) her ability to work part-time; (2) lack of objective medical evidence to support the severity of her claims; and (3) inconsistencies reported to her treatment providers.

A claimant's ability to work during a period of claimed disability can support an adverse credibility determination. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ provided clear and convincing reasons for rejecting claimant's subjective testimony, including claimant continuing to work "under the table" after his date last insured); *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (claimant's work as a part-time kitchen helper during period of claimed disability diminished her credibility since "[w]orking generally demonstrates an ability to perform a substantial gainful activity"). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch v. Barhart*, 400 F.3d 676, 681 (9th Cir. 2005) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The determinative issue is whether

the claimant's part-time work is inconsistent with the limitations asserted. *Compare Sweeney v. Barnhart*, 163 Fed.Appx. 580, 581 (9th Cir. 2006) (upholding an ALJ's adverse credibility finding when the Plaintiff's alleged limitations were inconsistent with her part-time work for several months after surgery for carpal tunnel syndrome); *with Forester v. Colvin*, 22 F.Supp.3d 1117, 1124-25 (D. Or. 2014) (finding that an ALJ erred in discrediting the Plaintiff when her part-time work from home with flexible hours was consistent with her assertion that she could only engage in sporadic activity).

In this case, the ALJ thoroughly discussed that Plaintiff contended that she was unable to work full-time due the effects of her depression and anxiety, shoulder pain, and stomach issues and that she had been terminated because she could not work the night shift due to drowsiness from her medication regimen. Tr. 26. The ALJ further discussed that at the hearing, Plaintiff admitted to returning to the workforce, working 10 to 12 hours each week. The ALJ noted that Plaintiff reported that she takes unscheduled breaks due to her anxiety or pain issues. Upon inquiry by the ALJ about Plaintiff's symptoms and abilities, Plaintiff stated she just has to "suck it up" sometimes and go to work, and admitted that sometimes she is able work through the stress. Tr. 26, 76, 80. The ALJ found that based on Plaintiff's testimony and her ability to persist in a cashier job on a part-time basis despite that "it exacerbates her pain and mental symptoms suggest she may be able to sustain less-demanding jobs in the national economy on a regular and continuous basis." Tr. 26. The ALJ's finding is supported by substantial evidence, and the ALJ could reasonably discount Plaintiff's credibility on this basis. Here, the ALJ thoroughly explained the basis for the adverse credibility determination and why Plaintiff's allegations are inconsistent with her demonstrated ability to work part-time. Although Plaintiff disagrees with the ALJ's interpretation of the record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the

10 - OPINION AND ORDER

ALJ's conclusion." *Batson*, 359 F.3d at 1198. Based on the above facts, it was reasonable for the ALJ to discount Plaintiff's Plaintiff's credibility based on her ability to work for an extended duration as a cashier despite her alleged anxiety and stomach issues after the alleged disability onset date.

Plaintiff contends that she is only able to sustain part-time work because she has an extraordinarily supportive employer. At the hearing, Plaintiff testified that her employer permits her to take unscheduled breaks when she has difficulty with pain or anxiety. Tr. 26, 72, 79-80. The ALJ found Plaintiff's testimony that she has never been disciplined to remain at the cash register her entire shift "simply unbelievable." Tr. 26. The ALJ found that it is more likely that Plaintiff "only takes breaks when scheduled or approved rather than unscheduled." Tr. 26. Plaintiff argues the ALJ's finding is not supported by substantial evidence, but instead is based purely on speculation. The Commissioner responds that the ALJ's finding is not speculative, but instead is based on testimony from the VE.

This particular finding by the ALJ is troublesome. As the Commissioner correctly notes, at the hearing, the ALJ inquired of the VE about what happens when the employer is required to cover for an employee who does not report for work. Tr. 108. The VE testified that if such behavior persisted, the employer usually terminates the employee. Tr. 108-09. However, the VE's testimony alone does not, on the record before the Court, amount to substantial evidence to undermine Plaintiff's testimony that she was never disciplined for taking an extra break or absenteeism.

After the hearing, Plaintiff's employment records from the craft store were submitted and accepted by the Appeals Council, and now are part of the administrative record. *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (evidence submitted to the Appeals

Council for the first time must be considered by the district court to determine whether substantial evidence supports ALJ's decision). Plaintiff's January 13, 2015 Performance Discussion Record indicates that on one occasion before November 6, 2014 hearing, and on six occasions following hearing, Plaintiff called in sick to the craft store, and she appears to have received a written warning. Tr. 378. And, a March 9, 2015 Performance Discussion Record shows that Plaintiff again received a written warning for calling in sick five additional times. Tr. 379. Based on this evidence, the ALJ could have inferred that Plaintiff's employer did, in fact, discipline Plaintiff for failing to conform to attendance norms. However, this evidence was not before the ALJ; rather this was new evidence submitted to the Appeals Council. The Court may not affirm an adverse credibility decision based on evidence not invoked by the ALJ. *Huffman v. Colvin*, Case No. 1:14-cv-00861-AC, 2015 WL 10353671, *5 (D. Or. Feb. 22, 2016); *see Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (holding the court may not affirm an adverse decision based on specific inconsistencies raised by the Commissioner *post hoc*); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). Therefore, the Court concludes that the ALJ's finding that Plaintiff's testimony about extra breaks was "simply unbelievable" is not supported by substantial evidence, and the ALJ erred in discounting her credibility on this particular basis.

In the decision, the ALJ also discredited Plaintiff based on the lack of objective medical evidence to support the severity of her symptoms. Contradiction with the medical record is a relevant consideration in discounting a claimant's credibility. *Carmickle*, 533 F.3d at 1161; *see also Burch*, 400 F.3d at 681 (holding that ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective . . . testimony cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's symptoms and their disabling effects." (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ discussed that Plaintiff's complaints of numbness and pain in her left forearm, wrist and hand were unsupported by objective findings. Tr. 26. As the records cited by the ALJ indicate, Plaintiff complained on several occasions of numbness and pain in her left forearm, and she sought emergency room treatment for her wrist pain. Tr. 417, 419, 422, 634. In records cited by the ALJ, Plaintiff's primary care physician John Powell, M.D., instructed Plaintiff to wear a wrist brace on her left arm to alleviate her symptoms and noted that there was a "functional overlay" to her carpal tunnel syndrome, but referred Plaintiff for nerve conduction studies. Tr. 466. Plaintiff did not always comply with the recommendation to wear the wrist brace. Tr. 634. To be sure, as one emergency room provider complained, "There is a distinct lack of therapeutic compliance here." Tr. 634. As the ALJ correctly found, on examination, Plaintiff demonstrated no diminished strength in her hands and grip, or extremities, and the nerve conduction study of her upper left extremity was normal. Tr. 26, 466-67, 478, 637 (a repeat of 478). The ALJ's findings in this regard are wholly supported by substantial evidence in the record. Based on the largely benign examination findings and negative nerve conduction study, the ALJ reasonably could infer that the severity of Plaintiff's subjective limitations are not supported by the objective medical evidence and appropriately discounted her credibility on this basis. *Carmickle*, 533 F.3d at 1169; *Imel v. Comm'r Soc. Sec. Admin.*, Case No. 6:16-cv-00560-MA, 2017 WL 3238230, *5 (D. Or. July 31, 2017) (upholding ALJ's adverse credibility determination where claimant's limitations not fully supported by medical record).

Furthermore, the record before the Court reveals additional substantial evidence supporting the ALJ's findings concerning Plaintiff's alleged limitations from carpal tunnel syndrome. Plaintiff submitted additional medical evidence to the Appeals Council, which the Council accepted and considered when denying review. *See Brewes,* 682 F.3d at 1163. In February 2015, Plaintiff reported to her treating provider Clyde A. Keys, M.D., that she was continuing to have carpal tunnel syndrome symptoms, with numbness and pain radiating up her arm. Tr. 1339-40. Dr. Keys scheduled her for a nerve conduction study, commenting that he was certain it would show carpal tunnel syndrome. Tr. 1339. In March 2015, the nerve conduction study was performed, and again the results were negative for carpal tunnel syndrome. Tr. 1338. At a June 2015 examination, Dr. Keys informed Plaintiff that she does not have carpal tunnel syndrome, and encouraged her to continue exercises for relief from the discomfort in her arm. Tr. 1338. Dr. Keys' treatment notes provide further substantial evidence demonstrating the lack of objective medical evidence to support the degree of limitations alleged by Plaintiff from her carpal tunnel syndrome. Thus, the ALJ findings are backed by substantial evidence in the record as a whole. *Conger v. Berryhill*, Case No. 3:16-cv-01850-BR, 2017 WL 3016163, *4 (D. Or. July 7, 2017) (finding medical evidence submitted to Appeals Council supported ALJ's finding that claimant not disabled).

Plaintiff argues that the ALJ erred in discounting Plaintiff on this basis, contending that Plaintiff's diagnosis of carpal tunnel syndrome is supported by the objective findings of a positive Tinel's sign, positive Phalen's test, and positive Finkelstein's test. The Court disagrees. The tests identified by Plaintiff are screening tests that rely upon Plaintiff's subjective reporting of pain or tingling. More importantly, Plaintiff's contention misses the point – the ALJ did not disagree with Plaintiff's carpal tunnel diagnosis. To be sure, the ALJ found carpal tunnel syndrome a severe

impairment at step two. Tr. 23. Rather, the ALJ found that based on the normal nerve conduction study and full strength in her hands and grip, the objective medical evidence did not support the degree of physical limitations Plaintiff alleges result from her carpal tunnel syndrome. The ALJ's findings are fully backed by substantial evidence, are a reasonable interpretation of the record as a whole, and will not be disturbed. *Molina*, 674 F.3d at 1111.

Additionally, the ALJ found that Plaintiff's allegations of severe back pain are not fully supported by the objective medical evidence. As the ALJ discussed, despite allegations of severe back pain, causing limitations with movement, standing and sitting, in a May 18, 2010 examination, Dr. Powell assessed a low back strain with decreased flexibility, and that Plaintiff had a "normal" range of motion, with no spasms or tenderness. Tr. 455. As the ALJ correctly observed, numerous treatment notes show no deficits in Plaintiff's sensation, reflexes, or ambulation, she retained full motor strength, and her supine and seated straight leg tests were negative for radiculopathy. Tr. 26, 463-65. And, in the treatment notes cited by the ALJ, Dr. Powell indicated a "[s]ignificant functional overlay contributes to [Plaintiff's] presentation" and he recommended Plaintiff try stretching and warm compresses for relief. Tr. 456. The ALJ's finding that Plaintiff's allegations of severe back pain are not as limiting as alleged is fully supported by substantial evidence, and the ALJ appropriately discounted her credibility on this basis.

Plaintiff highlights that her treatment notes in January, February and March of 2010 show some low back tenderness along the paraspinus muscles. *See* Tr. 459, 461-65. Contrary to Plaintiff's suggestion, these records do not undermine the ALJ's finding that the objective medical evidence does not support the severity of Plaintiff's alleged limitations from her low back pain. To be sure, the records cited by Plaintiff similarly show full range of motion, full motor strength,

negative straight leg testing, with Dr. Powell diagnosing a lumbar strain and recommending that Plaintiff stretch. Tr. 461, 465-66. To be sure, the objective medical evidence concerning Plaintiff's back pain reflects minimal functional limitations at best, with episodic pain that improved over time. The ALJ reasonably concluded that Plaintiff's pain symptoms related to her back were inconsistent with the objective medical evidence. Although Plaintiff offers a different conclusion, the ALJ's interpretation is rational, and will not be disturbed. *Molina*, 674 F.3d at 1111.

In the decision, the ALJ found that inconsistencies reported to Dr. Powell undermined Plaintiff's credibility. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [Plaintiff] that appears less than candid in weighing Plaintiff's credibility." *Tommasetti*, 533 F.3d at 1039. The ALJ noted that in May 2010, Plaintiff reported to Dr. Powell that she had lost 20 pounds in the previous couple of weeks, but Dr. Powell observed that Plaintiff had, in fact, gained one pound over the previous two months. Tr. 26, 454. The ALJ found this specific inconsistency undermined the veracity of Plaintiff's subjective pain complaints. Tr. 26. The ALJ's finding is supported by substantial evidence in the record. To be sure, Dr. Powell's treatment notes reflect that Plaintiff stopped taking Zyprexa due to weight gain concerns, but her weight had increased by a pound. Although Plaintiff now proposes a different interpretation of Dr. Powell's treatment notes, in the context of the record as a whole, the ALJ's interpretation is reasonable and will not be disturbed. *Molina*, 674 F.3d at 1111.

Finally, Plaintiff suggests that the ALJ cherry-picked the medical evidence pertaining to her alleged mental symptoms limitations, and provided a cursory recitation of the medical evidence. Pl.'s Br. at 11-12. As the ALJ correctly observed, none of Plaintiff's treating providers have endorsed the conclusion that her alleged limitations preclude employment, and the only medical

opinions in the record are those from nonexamining agency physicians. Tr. 28. This is noteworthy given the voluminous 1,347-page record in this case. Moreover, aside from one specific social limitation addressed below, Plaintiff fails to challenge the ALJ's evaluation of the medical evidence.

Although the ALJ erred in discounting Plaintiff's credibility on the basis of her being able to take unscheduled breaks, the error is harmless. The ALJ's remaining reasons (Plaintiff's ability to work part-time, lack of objective medical evidence, and inconsistencies reported to her treating physician), when taken together, constitute specific, clear and convincing support for the ALJ's adverse credibility determination on the record before the Court. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (despite that one reason for discounting claimant's testimony was error, remaining independent bases were supported by ample record evidence and provided clear and convincing support); *Carmickle*, 533 F.3d at 1163 (despite errors, ALJ's remaining reasons adequately supported adverse credibility finding). The ALJ's findings are sufficiently specific to permit the Court to conclude that Plaintiff's credibility was not arbitrarily discredited. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ did not err.

## II.    The ALJ Did Not Err in Evaluting Plaintiff's RFC or Step Five Finding

### A.    *Standards*

The RFC is the most a claimant can do on a sustained, regular and continuing basis, despite his or her functional limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony. *See Valentine,* 574 F.3d at 690; Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical

testimony and "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). All limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The ALJ, however, need not incorporate limitations identified through testimony that the ALJ permissibly discounted. *Batson*, 359 F.3d at 1197.

At step five, the Commissioner must show that the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Id.* The hypothetical posed to a vocational expert must only include those limitations supported by substantial evidence. *Robbins*, 466 F.3d at 886 (citing *Osenbrock*, 240 F.3d at 1163-65). "Conversely, an ALJ is not free to disregard properly supported limitations." *Id.*

B.      *Analysis*

Plaintiff argues that despite assigning great weight to the opinion of nonexamining agency psychologist Sanda L. Lundblad, Psy. D., the ALJ failed to include Dr. Lundblad's assessed limitation that she should do no work requiring public contact into the RFC. Plaintiff appears to suggest that the ALJ improperly inserted his own lay opinion for that of Dr. Lundblad. Pls.' Br. at 13, ECF No. 14. Plaintiff contends the hypothetical posed to the VE is defective because it failed to include the no public contact limitation and therefore the step five findings are not supported by substantial evidence. The Court disagrees.

On March 4, 2013, Dr. Lundblad completed a Mental Residual Functional Capacity Assessment ("MRFC"), in which she rated Plaintiff's social interaction limitations. Tr. 139. Dr. Lundblad opined that Plaintiff is "moderately limited" in her ability to interact with the general public, and is "moderately limited" in her ability to accept and respond to criticism from supervisors, but otherwise is not significantly limited in other areas of social interaction, including her ability to "get along with co-workers without being distracting or exhibiting behavioral extremes." Tr. 139. In the narrative portion of the MRFC, Dr. Lundblad explained that Plaintiff "should not perform work requiring public contact. No indication of a need for special supervision or of distracting behavior." Tr. 139. On August 12, 2013, Dr. Lundblad's opinion was affirmed on reconsideration by Bill Hennings, Ph.D. Tr. 168.

In the RFC, the ALJ found that Plaintiff "can tolerate occasional interaction with supervisors, but only superficial interaction with co-workers in the public (superficial defined as casual or perfunctory)." Tr. 25. Similarly, the ALJ propounded a hypothetical to the VE in which the individual is limited to superficial interaction with co-workers and the public. Tr. 103. Contrary to Plaintiff's contention, the ALJ gave two reasons for not incorporating Dr. Lundblad's limitation of no public contact into the RFC: (1) it is inconsistent with Plaintiff's hearing testimony, and (2) it is inconsistent with Plaintiff's medical record.

First, the ALJ found that Plaintiff's more recent testimony at the hearing "reasonably suggests she can tolerate at least superficial contact with co-workers or the general public." Tr. 27. Here, the ALJ did not simply substitute his medical opinion for that of Dr. Lundblad, but instead found this portion of Dr. Lundblad's opinion inconsistent with the record as a whole. As discussed at length above, at the hearing Plaintiff testified that she has been able to maintain part-time work as a cashier,

a job she held for almost a year at the time of the hearing. Tr. 66-69. Additionally, Plaintiff obtained and sustained her cashier job at a craft store *after* Dr. Lundblad offered her opinion. *See also* Tr. 385 (noting Plaintiff's dates of employment from August 7, 2013 to December 24, 2015). As the ALJ found when considering Plaintiff's credibility, Plaintiff's ability to persist in the cashier job for over a year, despite her allegations that the cashier job exacerbates her mental health symptoms, demonstrates an ability to work at a less-demanding job on a regular basis. Tr. 26. As noted above, the ALJ properly rejected Plaintiff's testimony, and the overwhelming substantial evidence in the record as a whole supports the ALJ's finding that she can tolerate superficial interaction with the public. *See Osenbrock*, 240 F.3d at 1164-65 (restrictions not supported by substantial evidence may be freely accepted or rejected by ALJ).

Second, the ALJ discussed that Plaintiff's mental health symptoms appeared to be improving as evidenced by her ability to maintain employment as a cashier. Tr. 27. The ALJ discussed that in an August 2012 diagnostic interview for obtaining mental health counseling, Plaintiff was described as pleasant and cooperative, and that her appearance, speech, memory, perception, and intellectual functioning were all within normal limits. Tr. 576-77. And, the ALJ noted that despite Plaintiff appearing depressed and agitated, she was nevertheless "active and alert." Tr. 444. Indeed, as the ALJ indicated, Plaintiff requested to be discharged from mental health treatment in January 2013 and noted improvement in her anxiousness. Tr. 590-93.

Here, Plaintiff argues that the ALJ failed to identify specific medical evidence to support the partial rejection of Dr. Lundblad's opinion that Plaintiff have no public contact. Plaintiff contends that the ALJ discusses only two medical records showing improvement, and that her when her mental health records are viewed more broadly, they reveal waxing and waning symptoms. *See*

*Garrison*, 759 F.3d at 1009 (noting court may not affirm ALJ's decision by isolating a specific quantum of evidence, but must consider record as a whole). Although the Court agrees with Plaintiff that the ALJ's discussion of her mental health symptoms was brief, Plaintiff has not demonstrated harmful error.

Furthermore, even if the ALJ erred in failing to include the limitation to no public contact, the error would be harmless. *Molina*, 674 F.3d at 1115 (stating the district court may not reverse an ALJ's decision on account of an error that is harmless). Here, the VE and ALJ identified three jobs that Plaintiff could perform: small products assembler II (DOT 739.687-030, *available at* 1991 WL 680180, with 227,477 jobs nationally and 3,515 jobs in Oregon); electronics worker (DOT 726.687-010, *available at* 1991 WL 679633, with 225,632 jobs nationally and 3,611 jobs in Oregon); and garment sorter (DOT 222.687-014, *available at* 1991 WL 672131, with 131,201 jobs nationally and 1,615 jobs in Oregon). None of the jobs identified require public contact and Plaintiff does not contend otherwise. *See Lichtner v. Colvin*, Case No. SA CV 14-1504-SP, 2016 WL 1274089, *5 (C.D. Cal. Mar. 31, 2016) (noting that if claimant was limited to no public contact, he could perform work as small products assembler and error was harmless); *Wilson v. Astrue*, Case No. 3:10-cv-01195-PK, 2011 WL 4828998, *3-4 (D. Or. Oct. 11, 2011) (noting small products assembler II job does not require public contact or co-worker interaction, finding error harmless at step five); *see also Kennedy v. Colvin*, Case No. 3:14-cv-04256-LB, 2015 WL 5693731, *16 (N.D. Cal. Sept. 29, 2015) (VE testified that where RFC included no public or employee contact, claimant could perform work as garment sorter). Additionally, review of the DOT descriptions of the three jobs identified by the VE does not reveal interactions with the public. Therefore, even if the ALJ had posed a hypothetical to the VE including a limitation to "no public contact," the Commissioner has still identified jobs

that exist in significant numbers that Plaintiff could perform, and the ALJ's ultimate non-disability determination would remain unchanged. *See Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (holding "25,000 jobs meets the statutory standard" for jobs in the national economy); *Tommasetti*, 533 F.3d at 1042 (finding error at step four harmless due to alternative findings at step five, and thus error was inconsequential to nondisability determination). Consequently, because Plaintiff has not established harmful error, the ALJ's decision is affirmed.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decisions denying benefits to Plaintiff are AFFIRMED.

IT IS SO ORDERED.

DATED this ___19___ day of OCTOBER, 2017.

Malcolm F. Marsh
United States District Judge